IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 38621-0-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DERYK ALEXANDER DONATO, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Deryk Donato appeals his conviction for second degree murder, with a special finding of a gang aggravator. We affirm.

FACTS

On December 9, 2018, Deryk A. Donato was housed in the Yakima County jail's Norteño gang unit, along with Julian Gonzales, Felipe Luis Jr., and Jacob Ozuna. Mr. Donato and Mr. Ozuna were roommates at the time. At around 11:30 p.m., a corrections officer looked into the unit and saw an inmate on the ground, surrounded by other inmates. After calling for backup, several officers and medical staff entered the unit and found Mr. Ozuna on the floor unconscious, but still alive, and with extreme blunt force injuries. Officers observed pools of blood, as well as blood streaked on the walls, floor, and stairway, and on the hands of Mr. Donato, Mr. Luis, and Mr. Gonzales. Mr. Ozuna was transported to the hospital where he died shortly after.

*Description of the incident*

The attack on Mr. Ozuna was captured by nonaudio surveillance cameras. Video footage showed Mr. Ozuna on the second floor of the unit talking to another inmate. Mr. Donato, Mr. Luis, and Mr. Gonzales were downstairs and can be seen talking and shaking hands. Mr. Donato and the two other men then went upstairs, approached Mr. Ozuna from behind, and initiated an attack. For 12 minutes, the three men continuously punched, kicked, and stomped on Mr. Ozuna. When Mr. Ozuna tried to get away, he was cornered and taken to the ground. When Mr. Ozuna appeared to lose consciousness, the beating did not stop; the three assailants kept punching and kicking Mr. Ozuna's body, including his face. Mr. Donato, Mr. Luis, and Mr. Gonzales briefly took a break to drag Mr. Ozuna along the upstairs hallway to the top of the stairs. When Mr. Ozuna started to move again, the beating resumed until Mr. Ozuna became nonresponsive. The three men then dragged Mr. Ozuna by his feet down the stairs of the unit, causing him to hit his head on each stair on the way down. Once at the bottom of the stairs, Mr. Ozuna appeared to move his arm. In response, Mr. Donato and his companions repeatedly kicked Mr. Ozuna in the face until he stopped moving.

During the attack, another inmate, Lindsey Albright, took items from Mr. Ozuna's cell and brought them back to his own. When officers later asked for the things he took,

Mr. Albright handed them a group of items, including a document of the "14 bonds" of the Norteño gang, books, and other pieces of paper, that were a mixture of both Mr. Ozuna and Mr. Donato's belongings. 2 Rep. of Proc. (RP) (Oct. 25, 2021) at 935, 939-40, 950.

Mr. Ozuna's autopsy revealed swelling around his head and face, bleeding in his nose and mouth, minor injuries to his hand and wrist, bruising on his neck, bruising on his chest, bruising and abrasions on his upper extremities, bruising on his right abdomen and pelvic areas, broken ribs, a liter of blood in his chest cavity, a bruise to his heart lining, contusions to his lungs, a hemorrhage near his kidneys, a one and one-half inch laceration on his scalp, and bruising and impact injuries on his skull. Although he had no skull fractures or major vessels torn, the beating caused Mr. Ozuna's brain to move around inside his skull and swell to the point where it cut off its own blood supply. Mr. Ozuna's official cause of death was rapid swelling of the brain resulting in respiratory failure. His official manner of death was homicide.

*Charges*

The State ultimately charged Mr. Donato in a two-count information. Count 1 charged aggravated first degree premeditated murder. One of the alleged aggravating circumstances was a gang aggravator under RCW 10.95.020(6). This aggravator alleged

the murder was committed "to obtain or maintain [Mr. Donato's] membership or to advance [his] position in the hierarchy of an organization, association, or identifiable group." Clerk's Papers (CP) at 70. Count 2 charged Mr. Donato with second degree murder. This count alleged a gang enhancement under RCW 9.94A.535(3)(aa). The enhancement alleged Mr. Donato "committed the current offense with intent to directly or indirectly cause any benefit, aggrandizement, gain, profit, or other advantage to or for [a] criminal street gang as defined [in] RCW 9.94A.030, its reputation, influence, or membership." *Id*. at 71.

*Motion in limine and* Knapstad[1] *motion*

In a motion in limine, the State moved to admit gang evidence pertaining to Mr. Donato, Mr. Ozuna and other individuals. As alleged in the information, the State claimed Mr. Ozuna's murder was gang related.

The State's investigation revealed Mr. Ozuna was in custody for the alleged murder of Dario Alvarado. Both Mr. Ozuna and Mr. Alvarado were members of the Norteño gang. According to the State's witnesses, the Norteños have a "'constitution'" called the "'14 bonds.'" CP at 28. Members must abide by the 14 bonds or risk punishment. The State theorized Mr. Ozuna had broken one of the bonds by killing

---

[1] *State v. Knapstad*, 107 Wn.2d 346, 729 P.2d 48 (1986).

Mr. Alvarado, a fellow Norteño, and thus needed to be disciplined. Testimony revealed Mr. Donato and his codefendants were also Norteño gang members who, the State claimed, were ordered to carry out the discipline.

Mr. Donato objected to the State's motion, arguing the evidence failed to establish a nexus between Mr. Donato's gang affiliation and the crime, and was prejudicial. Mr. Donato also joined his codefendants in filing a *Knapstad* motion to dismiss count 1, the aggravated murder charge, claiming the police testimony and gang expert testimony provided insufficient evidence, standing alone, to support an aggravating factor.

The trial court heard evidence and arguments for both motions in the same proceeding.

For purposes of the *Knapstad* motion, the court determined the aggravating circumstance was not an element of the crime charged. Thus, the court looked to only whether the State presented sufficient, admissible evidence of the elements of first degree premeditated murder. The court found the video provided sufficient evidence for a jury to convict on these elements.

Turning to the motion in limine, the court engaged in an ER 404(b) analysis. The court found the State had shown Mr. Donato and his codefendants were Norteños; Mr. Donato knew Mr. Ozuna; the Norteños follow a code including the 14 bonds;

5

and Mr. Donato and his codefendants worked together to assault and ultimately kill

Mr. Ozuna. The court found evidence of gang affiliation would be relevant to prove

the gang enhancement.[2]  And the court concluded the probative value of the evidence

as to the enhancement outweighed the prejudicial effect.

*Trial*

The case proceeded to a jury trial. The jury viewed the two videos from the jail

surveillance cameras showing the attack on Mr. Ozuna. The jury also heard testimony

from law enforcement about gang membership and the State's theory that Mr. Ozuna

was killed for gang-related reasons. The testimony was consistent with what had been

presented during the motion in limine hearing.

*Jury verdict and sentencing*

The jury found Deryk Donato guilty of second degree murder under

RCW 9A.32.050(1)(b), along with a gang enhancement. Mr. Donato was acquitted

of first degree murder. Pursuant to a special jury verdict, the court found substantial

and compelling reasons to justify an exceptional sentence of 60 months above the

standard range for Count 2. Mr. Donato received a total sentence of 457 months in prison.

---

[2] The court differentiated the gang aggravator, which focused on Mr. Donato advancing his position in a gang organization, with a gang enhancement, which was concerned with a more general benefit to the gang.

ANALYSIS

*Admissibility of gang evidence*

Mr. Donato asserts the trial court abused its discretion when it admitted evidence of his gang affiliation under ER 404(b). ER 404 governs the admissibility of character evidence. Under ER 404(b), evidence an individual has engaged in "other crimes, wrongs, or acts" is inadmissible to prove the individual's character or that the individual acted in conformity with a particular character trait. Nevertheless, other act evidence may be admissible for noncharacter purposes.

Gang affiliation evidence can be a form of character evidence. *See State v. Scott*, 151 Wn. App. 520, 526, 213 P.3d 71 (2009). Thus, in order to introduce gang affiliation evidence at trial, a party must comply with the requirements of ER 404(b). *Id*.

ER 404(b) requires a four-part inquiry prior to the admission of other act evidence: the trial court must (1) find by a preponderance of the evidence that the act at issue occurred, (2) identify the purpose for which the proponent seeks to introduce the evidence, (3) assess whether the evidence is relevant to prove an element of the crime charged, and (4) determine whether the probative value of the other act evidence outweighs its prejudicial effect. *State v. Yarbrough*, 151 Wn. App. 66, 81-82, 210 P.3d 1029 (2009). We review a trial court's decision to admit other act evidence under

7

ER 404(b) for abuse of discretion. *State v. Embry*, 171 Wn. App. 714, 731, 287 P.3d 648 (2012).

Mr. Donato's challenge focuses on the fourth part of the 404(b) test. He argues the State's gang evidence should not have been admitted because there was insufficient proof Mr. Ozuna's murder was gang related. We are unpersuaded.

While circumstantial, the State's evidence readily supports an inference that Mr. Ozuna's murder was perpetrated for the purpose of benefitting the Norteños. The three Norteño members shook hands, jointly approached Mr. Ozuna, and then worked in concert to assault Mr. Ozuna, indicating the assailants were operating under a shared motive. As Norteños, the three men were presumably aware of the expectations set by the 14 bonds, and knew they would be placing themselves in danger if the assault against Mr. Ozuna was not authorized. The fact that Mr. Ozuna was in jail for killing another Norteño provided a potential basis for authorization of the killing. And Mr. Albright's removal of the 14 bonds from Mr. Donato's cell during the assault suggests there was an attempt to hide the connection between the 14 bonds and Mr. Ozuna's murder. Given the public nature of Mr. Ozuna's murder, one can infer the murder was intended to send a message to other Norteños not to violate the terms of the 14 bonds.

Because the gang evidence was directly relevant to the State's case and its alleged gang enhancement, the gang evidence was not more prejudicial than probative.

*Aggravating factor*

Apart from his evidentiary challenge, Mr. Donato argues there was insufficient evidence to support the jury's finding that Mr. Donato committed the crime to benefit a criminal street gang, as set forth in RCW 9.94A.535(3)(aa). We reject this argument for the same reason we reject his argument regarding ER 404(b). The circumstantial evidence presented by the State amply supported the jury's conclusion that Mr. Donato killed Mr. Ozuna with the intent to benefit the Norteño street gang.

CONCLUSION

The judgment of conviction is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____        _____
Staab, J.                                Cooney, J.

9